1 | DANIEL H. REISS (SBN 150573)
dhr@lnbrb.com
2 | DAVID B. GOLUBCHIK (SBN 185520)
dbg@lnbrb.com
3 | LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
4 | Los Angeles, California 90067
5 | Telephone: (310) 229-1234
Facsimile: (310) 229-1244
6 |
7 | Attorneys for Chapter 11 Debtor and Debtor in Possession
Tower Park Properties, LLC
8 |

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re | ) | Case No. 2:08-bk-20298-BR |
|---|---|---|
| TOWER PARK PROPERTIES, LLC, | ) | Chapter 11 |
| Debtor and Debtor in Possession, | ) | **EX PARTE APPLICATION FOR HEARING ON SHORTENED TIME ON MOTION BY TOWER PARK PROPERTIES, LLC TO APPROVE SETTLEMENT AGREEMENT BY AND WITH OAKRIDGE LANDSCAPE, INC., CHARLES DICKENS, GARY MORRIS, PACIFIC CREST CONSULTANTS, INC., AND GLM ASSOCIATES; DECLARATION OF ROBERT S. MANN** |
| | ) | Date: [NO HEARING REQUESTED] |
| | ) | Time: |
| | ) | Place: Courtroom 1668 |
| | ) | 255 East Temple Street |
| | ) | Los Angeles, CA 90012 |

Tower Park Properties, LLC, the debtor and debtor in possession herein (the "Debtor"), hereby requests the Court to enter an order shortening notice for a hearing on the concurrently filed motion to approve the Settlement Agreement (the "Settlement Agreement") annexed hereto as Exhibit "A" entered into with Oakridge Landscape, Inc., Charles Dickens, Gary Morris, Pacific Crest Consultants, Inc. ("PCC") and GLM Associates (the six parties hereby collectively referred to as the "Parties"), subject to this Court's approval, so that a hearing on the Motion take place no later than **Monday, September 24, 2009**, as follows:

## I.   A HEARING ON SHORTENED TIME TO APPROVE THE PROPOSED SETTLEMENT IS NECESSARY TO RESOLVE STATE COURT LITIGATION COMMENCED AGAINST ONE OF THE DEBTOR'S EXISTING SECURED LENDERS AND SUCH IS ESSENTIAL TO ONGOING PLAN AND EXIT FINANCING NEGOTIATIONS.

The Debtor is the owner of a fee simple interest in one of the most valuable and spectacular undeveloped pieces of real property in the world (the "Property"). The Property, which is in the prestigious "90210" zip code, is adjacent to properties of the rich and famous of Beverly Hills and spans 157 acres on the mountain top immediately above the City of Beverly Hills, overlooking the entire City of Los Angeles. The Property has views of the Pacific Ocean to the west, downtown Los Angeles and beyond to the east, the San Fernando Valley and mountain ranges to the north, and the middle of Los Angeles to the south. As set forth below, the Property has been entitled and a substantial amount of the infrastructure improvements have been completed to prepare the land for a residential development second to none – six residences on six parcels that are approximately two flat acres each, with secured entry, unparalleled views, permanent green space, surrounded by mountains, canyons and beautiful

2

scenery. When fully developed, the Property will have six addresses that will be among the most exclusive in the world.

The Property is currently encumbered by liens securing three senior loans (the "Existing Loans") in favor of Hughes Investment Partnership, LLC and one of its affiliates, MH Holdings II H, LLC (collectively, the "Existing Lenders"). The Existing Loans have matured in accordance with their terms. Currently, the total amount due, owing and unpaid under the Existing Loans is more than $57,000,000, exclusive of the lenders' attorneys fees, foreclosure charges and other related expenses.

The Court has been informed by way of a number of monthly status conferences and reports attendant thereto that the Debtor is currently negotiating exit financing with the Existing Lenders which will be the linchpin in the Debtor's anticipated successful efforts to confirm a chapter 11 reorganization. **Unfortunately, certain litigation filed by the City of Los Angeles against one of the Existing Lenders may cause material delay to the progress of these negotiations; fortunately, the Debtor believes that approval of the Settlement Agreement will quickly resolve the issues that have arisen with respect to the City's litigation.**

The City of Los Angeles recently filed a lawsuit against MH Holdings II H, LLC, one of the Existing Lenders and the original owner of the Property, by which the City seeks to make a claim upon the surety bonds posted in 2004 that were used to guarantee the completion of certain infrastructure improvements. Because these improvements were not completed within the original two year period allotted to their construction, the City now claims that it is entitled to force the issuer of the surety bonds to pay the City to complete those improvements.

The Debtor been advised by the City Attorney that the Debtor need only obtain an extension for the completion of the infrastructure improvements from the appropriate City agencies in order for the City to dismiss the lawsuit. In order to obtain such an extension, the

3

Debtor will need to extend the surety bonds and bring them current. In addition, the Debtor will have to extend the coverage under the "wrap" insurance policy in order to show the City that it is currently an additional insured under that policy. Finally, the Debtor will have to present the City with an updated title report and a small processing fee. The Debtor estimates that the cost to bring the surety bonds current, renew the wrap policy, obtain the title report and pay the processing fee will be approximately $40,000 to $45,000.

The Debtor intends to use some of the proceeds from the Settlement Agreement to pay those expenses. The dismissal of the City lawsuit is an important issue in allowing the Debtor to proceed with its negotiations with the Existing Lenders and for the Debtor to file its amended chapter 11 plan of reorganization which is currently due on September 15, 2009. The Debtor is informed and believes that the pending lawsuit of the City may cause further and unnecessary delay in concluding a final deal with the Existing Lender, thereby causing harm to the administration of this case. **Therefore, the prompt approval of the Settlement Agreement by the Bankruptcy Court is critical to the forward progress in this case.**

## II.    PROPOSED SETTLEMENT.

### A.    Background.

The subject matter of the proposed settlement arises from and relates to that certain Los Angeles Superior Court action entitled <u>Oakridge Landscape, Inc. v. Tower Park Properties,</u> LLC, et al., LASC Case No. SC 099860 and related cross-complaints between the Debtor, Oakridge and PCC (hereinafter, the "Oakridge Action"). In the Oakridge Action, Oakridge claims that the Debtor, PCC and Dickens are obligated to pay Oakridge approximately $64,000 for breach of a written agreement under the terms of which Oakridge provided erosion control services for the benefit of the Real Property. The Debtor claims that Oakridge performed such services negligently and that errors and omission of Oakridge caused damage to the Property

4

and to the property of an adjoining landowner and caused the Debtor to incur other economic damages.

Additionally, an action entitled Jagdish C. Amar v. Tower Park Properties, LLC, LASC Case No. SC 098856 (the "Amar Action") relates to the subject matter of the Settlement Agreement. The plaintiff in the Amar Action is an adjoining landowner who claimed that his property was damaged by the failure of the Debtor to install proper erosion control measures on the Real Property. Prior to the date hereof, a settlement was reached in the Amar Action under the terms of which the insurance carriers for the Debtor and Oakridge paid a substantial amount of money to the plaintiff.

Oakridge claims $64,000 against this bankruptcy estate and asserts a mechanics lien as security for its claim. The Debtor disputes Oakridge's alleged status as a secured creditor and the amount of its claim

**B.      Summary of Proposed Settlement Terms.**[1]

The principal terms of the Settlement Agreement are as follows:

1.      In full settlement of the claims of the Debtor against Oakridge, the insurance carrier for Oakridge will pay to the Debtor a lump sum of $115,000 (the "Settlement Sum") within fourteen days of the date of the Settlement Agreement (the "Payment Date").

2.      In full settlement of the claims of Oakridge, which shall include the claims raised by Oakridge in the Oakridge Action and its claim against this bankruptcy estate (the "Oakridge Creditor's Claim"), the Debtor shall pay to Oakridge the sum of $10,000 (the "Oakridge Settlement Sum") on or before the Payment Date.

3.      Upon negotiation of the Oakridge Settlement Sum, Oakridge shall dismiss with prejudice the Oakridge Action, the Debtor shall dismiss its related cross-complaint with

---

[1] To the extent that the description of the Settlement Agreement in this Motion is inconsistent with the terms of the Settlement Agreement, the Settlement Agreement shall control.

5

1  prejudice and the releases set forth in the Settlement Agreement will become effective. Each

2  party has agreed to bear its own costs and expenses incurred in connection with the Oakridge

3  Action.

4      4.      In addition, the following persons or entities, named as defendants in the

5  Oakridge Action shall be dismissed: Charles Dickens, Tower Park Development, LLC, Gary

6

7  Morris, Pacific Crest Consultants and GLM Associates.

8      The Debtor believes that the Settlement is in the best interests of creditors. The estate

9  will be receiving the Settlement Sum of $115,000 and will be resolving Oakridge's alleged

10  $64,000 secured claim. In addition, the Debtor will be able to resolve the litigation brought by

11  the City and have some additional funds available to pay for certain post-petition expenses of

12  the estate.

13  **III.    CONCLUSION.**

14      WHEREFORE, the Debtor respectfully requests this Court to enter an order

15  shortening time to hear the Settlement Motion, such that the hearing on the Settlement Motion

16  occur no later than Monday, August 24, 2009 and granting any other and further relief as may

17  be just and proper

18  Dated: August 17, 2009                    TOWER PARK PROPERTIES, LLC

19

20                          By: _____ */s/ Daniel H. Reiss* _____.
                                DANIEL H. REISS
21                              DAVID B. GOLUBCHIK
                                LEVENE, NEALE, BENDER, RANKIN
22                              & BRILL L.L.P.
                                Counsel for Debtor and
23                              Debtor-in-Possession
                                Tower Park Properties, LLC
24

25

26

27

28

6

## DECLARATION OF ROBERT S. MANN

I, Robert S. Mann, declare as follows:

1. I am the manager of Tower Park Properties, LLC, the debtor and debtor in possession herein (the "Debtor"). I have thirty years of experience in construction, real estate and business litigation, arbitration and mediation. In addition, I have over 25 years of substantial experience in litigation, arbitration and mediation of complex construction disputes. Unless indicated, this declaration is based on my personal knowledge, as well as my review of numerous documents including, but not limited to, title reports, loan documents, deeds of trust, the Debtor's books and records, and meetings with the Debtor's counsel, real estate professionals and investors, and others familiar with the real estate owned by the Debtor, and my own personal inspection of the Debtor's real property and all construction related thereto.

2. The Debtor is the owner of a fee simple interest in one of the most valuable and spectacular undeveloped pieces of real property in the world (the "Property"). The Property, which is in the prestigious "90210" zip code, is adjacent to properties of the rich and famous of Beverly Hills and spans 157 acres on the mountain top immediately above the City of Beverly Hills, overlooking the entire City of Los Angeles. The Property has views of the Pacific Ocean to the west, downtown Los Angeles and beyond to the east, the San Fernando Valley and mountain ranges to the north, and the middle of Los Angeles to the south. As set forth below, the Property has been entitled and a substantial amount of the infrastructure improvements have been completed to prepare the land for a residential development second to none – six residences on six parcels that range from 1.5 to 2.6 flat acres each, with secured entry, unparalleled views, permanent green space, surrounded by mountains, canyons and beautiful scenery. When fully developed, I believe that the Property will have six addresses that will be among the most exclusive in the world.

7

Annexed hereto is a Settlement Agreement by and among the Debtor, Oakridge Landscape, Inc., Charles Dickens, Gary Morris, Pacific Crest Consultants, Inc. ("PCC") (the five parties hereby collectively referred to as the "Parties"). The subject matter of the proposed settlement arises from and relates to that certain Los Angeles Superior Court action entitled Oakridge Landscape, Inc. v. Tower Park Properties, LLC, et al., LASC Case No. SC 099860 and related cross-complaints between the Debtor, Oakridge and PCC (hereinafter, the "Oakridge Action"). In the Oakridge Action, Oakridge claims that the Debtor, PCC and Dickens are obligated to pay Oakridge approximately $64,000 for breach of a written agreement under the terms of which Oakridge provided erosion control services for the benefit of the Property. The Debtor claims that Oakridge performed such services negligently and that errors and omission of Oakridge caused damage to the Property and to the property of an adjoining landowner and caused the Debtor to incur other economic damages.

3. Additionally, an action entitled Jagdish C. Amar v. Tower Park Properties, LLC, LASC Case No. SC 098856 (the "Amar Action") is related to the subject matter of the Settlement Agreement. The plaintiff in the Amar Action is the adjoining landowner who claimed that his property was damaged by the failure of the Debtor to install proper erosion control measures on the Property. Prior to the date hereof, a settlement was reached in the Amar Action under the terms of which the insurance carriers for the Debtor and Oakridge paid a substantial amount of money to the plaintiff.

4. Oakridge claims $64,000 against this bankruptcy estate and asserts a mechanics lien as security for its claim. The Debtor disputes Oakridge's alleged status as a secured creditor and the amount of its claim

5. The principal terms of the Settlement Agreement are as follows:

8

a. In full settlement of the claims of the Debtor against Oakridge, the insurance carrier for Oakridge will pay to the Debtor a lump sum of $115,000 (the "Settlement Sum") within fourteen days of the date of the Settlement Agreement (the "Payment Date").

b. In full settlement of the claims of Oakridge, which shall include the claims raised by Oakridge in the Oakridge Action and its claim against this bankruptcy estate (the "Oakridge Creditor's Claim"), the Debtor shall pay to Oakridge the sum of $10,000 (the "Oakridge Settlement Sum") on or before the Payment Date.

c. Upon negotiation of the Oakridge Settlement Sum, Oakridge shall dismiss with prejudice the Oakridge Action, the Debtor shall dismiss its related cross-complaint with prejudice and the releases set forth in the Settlement Agreement will become effective. Each party has agreed to bear its own costs and expenses incurred in connection with the Oakridge Action.

d. In addition, the following persons or entities, named as defendants in the Oakridge Action shall be dismissed: Charles Dickens, Tower Park Development, LLC, Gary Morris, Pacific Crest Consultants and GLM Associates.

6. With respect to the merits of the settlement between Oakridge and the Debtor, by way of background, I briefly describe the circumstances. The Debtor hired Oakridge Landscape, Inc. to install erosion control devices on the property. The Debtor contends that Oakridge failed to properly install such devices and that as a result, water and debris traveled down the East side of the property and caused damage to the property of one Dr. Amar. Dr. Amar sued the Debtor and Oakridge. That claim was settled, leaving a claim by Oakridge for payments allegedly due for the work that Oakridge performed (approximately $64,000) and the Debtor's claim for damages against Oakridge. Oakridge's insurance carrier has now agreed to pay the Debtor the sum of $115,000 to settle the Debtor's claims. The Debtor has agreed,

9

subject to Bankruptcy Court approval, to pay Oakridge $10,000 on the Oakridge contract claims. I believe that the settlement is fair and reasonable to both the Debtor and Oakridge. Oakridge has argued that at least some of the work that Oakridge did on the property was beneficial and that Oakridge is entitled to some payment. While the Debtor does not agree with this contention, as a compromise, the $10,000 payment is a reasonable settlement and is far less than Oakridge's secured claim of approximately $64,000 plus attendant legal fees.

7. The Settlement Agreement is also beneficial to resolving other important issues in this case. As the Court is aware, the Property is currently encumbered by liens securing three senior loans (the "Existing Loans") in favor of Hughes Investment Partnership, LLC and one of its affiliates, MH Holdings II H, LLC (collectively, the "Existing Lenders"). The Existing Loans have matured in accordance with their terms. Currently, the total amount due, owing and unpaid under the Existing Loans is more than $57,000,000, exclusive of the lenders' attorneys fees, foreclosure charges and other related expenses.

8. The Court has been informed by way of a number of monthly status conferences and reports attendant thereto that the Debtor is currently negotiating exit financing with the Existing Lenders which will be the linchpin in the Debtor's anticipated successful efforts to confirm a chapter 11 reorganization. Unfortunately, certain litigation filed by the City of Los Angeles against one of the Existing Lenders may cause delay to the progress of these negotiations; fortunately, the Debtor believes that approval of the Settlement Agreement will quickly resolve the issues that have arisen with respect to the City's litigation.

9. The City of Los Angeles recently filed a lawsuit against MH Holdings II, the original owner of the property and now a secured creditor against the Debtor, in which the City seeks to make a claim upon the surety bonds posted in 2004 that were used to guarantee the completion of certain infrastructure improvements. Because these improvements were not

10

completed within the original two year period allotted to their construction, the City now claims that it is entitled to force the issuer of the surety bonds to pay the City to complete those improvements.

10.     The Debtor been advised by the City Attorney that the Debtor need only obtain an extension for the completion of the infrastructure improvements from the appropriate City agencies in order for the City to dismiss the lawsuit. In order to obtain such an extension, the Debtor will need to extend the surety bonds and bring them current. In addition, the Debtor will have to extend the coverage under the "wrap" insurance policy in order to show the City that it is currently an additional insured under that policy. Finally, the Debtor will have to present the City with an updated title report and a small processing fee.

11.     I estimate that the cost to bring the surety bonds current, renew the wrap policy, obtain the title report and pay the processing fee will be approximately $40,000 to $45,000.

12.     The Debtor intends to use some of the proceeds from the settlement of the Oakridge Action to pay those expenses. The dismissal of the City lawsuit is an important issue in allowing the Debtor to proceed with its negotiations with the Existing Lenders and for the Debtor to file its amended chapter 11 plan of reorganization which is currently due on September 15, 2009. The Debtor is informed and believes that the pending lawsuit of the City may cause further and unnecessary delay in concluding a final deal with the Existing Lender, thereby causing harm to the administration of this case. Therefore, the prompt approval of the settlement by the Bankruptcy Court is critical to the Debtor's forward progress in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17ᵗʰ day of August, 2009 at Los Angeles, California.

ROBERT S. MANN

11

# EXHIBIT "A"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS AGREEMENT OF SETTLEMENT AND MUTUAL RELEASE (the "Settlement and Release"), is made and entered into in the City of Los Angeles, County of Los Angeles, State of California and is effective upon execution hereof by the parties below.

### RECITALS

A.  The parties to this Settlement and Release are:

1.  Tower Park Properties, LLC

2.  Tower Park Development, LLC

3.  GLM Associates and Gary Morris, individually

4.  Pacific Crest Consultants, Inc.

5.  Charles Dickens (Tower Park Properties, LLC, Tower Park Development, LLC, GLM Associates, Pacific Crest Consultants, Inc., Gary Morris individually and Charles Dickens are collectively referred to herein as "TPP").

6.  Oakridge Landscape, Inc. ("Oakridge")

B.  The real property that is the subject hereof is the 157 acre property commonly known as Tower Park, located at the terminus of Tower Grove Drive, Beverly Hills, CA that is the subject of Vesting Tentative Tract Map. No. 51034 (hereinafter "Tower Park"). Tower Park is owned by TPP.

D.  The subject matter hereof (hereinafter "Subject Matter") is the events, transactions and occurrences arising from and related to the matters that were or could have been alleged in that certain Los Angeles Superior Court action entitled Oakridge

1

13

Landscape, Inc. V. Tower Park Properties, etc. et al, bearing LASC Case No. SC 098860 and related cross complaints between TPP , Oakridge and PCC (hereinafter the "Oakridge Action") and the facts, acts and events giving rise thereto. In the Oakridge Action, Oakridge claims that TPP, PCC and Dickens are obligated to pay Oakridge approximately $64,000 for breach of a written agreement under the terms of which Oakridge provided erosion control services for the benefit of the Tower Park property. TPP claims that Oakridge performed such services negligently and that the errors and omissions of Oakridge caused damage to the Tower Park property and to the property of an adjoining landowner and caused Tower Park to incur other economic damages.

E.    An additional action which is the subject hereof is entitled Jagdish C. Amar, et al v. Tower Park Properties, LLC, bearing LASC Case No. SC 098856 (hereinafter the "Amar Action"). The plaintiff in the Amar action is the adjoining landowner who claimed that his property was damaged by the failure of TPP to install proper erosion control measures on the Tower Park property. Prior to the date hereof, a settlement was reached in the Amar Action under the terms of which the insurance carriers for TPP and Oakridge paid monies in settlement of the claims of Amar.

F.    The Chapter 11 bankruptcy action to which reference is made herein is entitled In Re Tower Park Properties, LLC, bearing Case No. 2:08-bk-20298-BR (the "TPP Chapter Proceedings").

G.    Oakridge has filed a proof of claim as secured creditor in the TPP Chapter proceedings, in the amount of approximately $64,000 (the "Oakridge Creditor's Claim").

2

H.   TPP contests the Oakridge Creditor's Claim in the TPP Chapter Proceedings.

IN WITNESS WHEREOF, the parties hereto agree as follows:

### SETTLEMENT

1.   Subject to Bankruptcy Court Approval. The settlement set forth herein is subject to
and conditioned upon approval of the U.S. Bankruptcy Court in the TPP Chapter
Proceedings. TPP shall instruct its counsel in the TPP Chapter Proceedings to
obtain such approval with all due deliberate speed.

2.   Oakridge Settlement Payment. In full settlement of the claims of TPP against
Oakridge, the insurance carrier for Oakridge will pay to TPP the sum of $115,000
(the "Settlement Sum") in good funds within 14 days from the date hereof. TPP
shall hold the Settlement Sum and not disburse same until such time as the
Bankruptcy Court approves the terms of this Agreement.

3.   TPP Settlement Payment. In full settlement of the claims of Oakridge, which shall
include the claims raised by Oakridge in the Oakridge Action and the Oakridge
Creditor's Claim, TPP shall pay to Oakridge the sum of $10,000 (the "Oakridge
Settlement Sum") within 14 days of approval by the U.S. Bankruptcy Court of the
terms of this settlement.

4.   Dismissal of the Oakridge Action and Dismissal of Cross-Complaints. Upon
negotiation of the Oakridge Settlement Sum, Oakridge shall dismiss with prejudice
the Oakridge Action, TPP shall dismiss its cross-complaint in such action with
prejudice, TPP and Oakridge shall dismiss with prejudice their cross-complaints in
the Amar Action and the releases set forth below with respect to the Subject Matter

3

15

hereof shall become effective. With regard to the Oakridge Action and the Amar Action, each side shall bear its own costs and expenses including attorneys fees.

5.	Mutual Releases. Subject to the payment and negotiation of the Settlement Sum and the Oakridge Settlement Sum as set forth in paragraphs 1 and 2, above, the parties for and on behalf of themselves and their predecessors and successors and on behalf of their agents, representatives, insurance carriers and employees does hereby release and discharge one another from and against any and all claims, demands, and causes of action, known and unknown, suspected or unsuspected which they may now have, hereafter have or hereafter claim to have against one another by reason of any matter or thing related to, or connected directly or indirectly with, the events, transactions or occurrences constituting the Subject Matter hereof and TPP waives and releases Oakridge with respect to any and all avoidance actions under Section 500 of the Bankruptcy Code.

6.	Waiver of Civil Code Section 1542. With respect to the releases set forth in Paragraph 5 above, the parties further agree as follows: The releases set forth herein are made notwithstanding the provisions of Section 1542 of the California Civil Code, which provides as follows:

> "A general release does not extend to claims which the
> creditor does not know or suspect to exist in his or her favor
> at the time of executing the release, which if known by him or
> her must have materially affected his or her settlement with
> the debtor."

The parties understand and acknowledge the significance and consequences of such

4

specific waiver of Section 1542, waive the provisions of such section upon the advice of their respective legal counsel, and hereby assume responsibility for any injury, damage or loss which may hereafter arise in respect to such releases, except as specifically hereinabove provided, although unknown or unanticipated at the time of the execution of this Settlement and Release

7. Ownership of Released Claims. The Parties each represent and warrant that they are and at all times have been the owners of the claims, demands, and causes of action being released hereby and further, that no portion of any claim, right, demand or cause of action released hereby, nor any portion of any recovery or settlement to which it might be entitled from the other and which is released hereby, has been assigned or transferred by and to any person, firm or entity in any manner, including but not limited to assignment or transfer by subrogation or operation of law. In the event that any claim, demand or suit shall be made or instituted against any released party because of any such purported assignment, transfer or subrogation, each party hereto, as the case may be, agrees to indemnify and hold the other free and harmless from and against any such claim, demand or suit.

8. Binding Upon Successors and Assigns. All of the terms of this Settlement and Release shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their spouses, families, heirs, executors, administrators, employees, agents, officers, directors, transferees, predecessors, successors and/or assigns and all persons claiming by or through such respective parties.

9. Counterparts. This Settlement and Release may be executed in two or more counter-parts each of which shall be deemed to be duplicate original, but all of which

5

together shall constitute one and the same instrument. Fax signatures shall be equally as valid and binding as original signatures.

10. Governing Law, Jurisdiction, Venue and Dispute Resolution. This Settlement and Release shall be governed by and construed in accordance with the laws of the State of California; each party hereto agrees, as a material inducement to every other party, that any dispute arising from this Agreement shall be submitted to George Calkins, Esq., for binding resolution, the procedure of such resolution to be determined by George Calkins, Esq. The prevailing party in any dispute arising hereunder, including the need to enforce the provisions hereof, shall be entitled to recover its attorneys fees and costs.

11. Disclaimer of Third Party Beneficiary Contract. By execution hereof, the parties specifically disavow any desire or intention to create a "third-party" beneficiary contract, and specifically declare that no person or entity, save and except for the parties hereto, their heirs, and successors, and their voluntary assigns, shall have any rights hereunder nor any right of enforcement hereof.

12. Additional Documents. Each of the parties hereto specifically agrees to execute such other and further instruments and documents as may reasonably be required to effectuate the terms, conditions and objectives of this Settlement and Release.

13. Representation by Counsel of Own Choosing. By execution hereof, each party represents and warrants that said party is either represented by counsel of his choosing, or has been advised to seek such representation, advice, or counsel, and has voluntarily and knowingly declined to do so; further that there have been no representations made to any party hereto by any attorney, or by any other party,

6

which is being relied upon and further, that each party recognizes and agrees that for the purposes of this Settlement and Release, no attorney representing any party hereto has undertaken any duty to disclose any facts or knowledge had or possessed by said attorney.

Dated: _August 14, 2004_

Tower Park Properties, LLC, Debtor in Possession
By:

Robert S. Mann, Esq., Its Manager

Dated: _____

Tower Park Development, LLC
By:

Charles Dickens, Its Managing Member

Dated: _____

Oakridge Landscape, Inc.
By:

Its Authorized Representative

Dated: _____

Charles Dickens

Dated: _Aug 14, 2009_

Pacific Crest Consultants, Inc.
By:

Gary L. Morris, Its President

Dated: _Aug 14, 2009_

Gary L. Morris, individually

Dated: _Aug 14, 2009_

GLM Associates
By:

Gary L. Morris, Its Authorized Representative

7

which is being relied upon and further, that each party recognizes and agrees that for

the purposes of this Settlement and Release, no attorney representing any party

hereto has undertaken any duty to disclose any facts or knowledge had or possessed

by said attorney.

Dated: _August 14, 2009_                    Tower Park Properties, LLC, Debtor in Possession
By:

Robert S. Mann, Esq., Its Manager

Dated: _August 17 2009_                     Tower Park Development, LLC
By:

Charles Dickens, Its Managing Member

Dated: _____                      Oakridge Landscape, Inc.
By:

Its Authorized Representative

Dated: _August 17 2009_

Charles Dickens

Dated: _____                      Pacific Crest Consultants, Inc.
By:

Gary L. Morris, Its President

Dated: _____

Gary L. Morris, individually

Dated: _____                      GLM Associates
By:

Gary L. Morris, Its Authorized Representative

7

20

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

A true and correct copy of the foregoing document described as EX PARTE APPLICATION FOR HEARING ON SHORTENED TIME ON MOTION BY TOWER PARK PROPERTIES, LLC TO APPROVE SETTLEMENT AGREEMENT BY AND WITH OAKRIDGE LANDSCAPE, INC., CHARLES DICKENS, GARY MORRIS, PACIFIC CREST CONSULTANTS, INC., AND GLM ASSOCIATES; DECLARATION OF ROBERT S. MANN will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 17, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Michael D Breslauer    mbreslauer@swsslaw.com, wyones@swsslaw.com
- Jeffrey Lee Costell    jlcostell@costell-law.com, aicornelius@costell-law.com;merishe@costell-law.com;rhull@costell-law.com;hdooley@costell-law.com
- Christina M Craige    ccraige@sidley.com
- Daniel Denny    ddenny@gibsondunn.com
- Thomas N FitzGibbon    tnf@ptflaw.com
- David B Golubchik    dbg@lnbrb.com
- Jayne T Kaplan    kaplanlawoffices@sbcglobal.net
- Craig G Margulies    cmargulies@lm-lawyers.com
- Aron M Oliner    roliner@duanemorris.com
- Craig M Rankin    cmr@lnbrb.com
- Daniel H Reiss    dhr@lnbrb.com
- Bruce S Schildkraut    bruce.schildkraut@usdoj.gov
- Steven A Sokol    ssokol@hallingsokol.com
- Peter T Steinberg    mr.aloha@sbcglobal.net
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Jason Wallach    jwallach@gladstonemichel.com
- Scott H Yun    syun@stutman.com

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On August 17, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page (ALL ENTITIES ON ATTACHED PAGE SERVED VIA UNITED STATES MAIL)

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 17, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                 **F 9013-3.1**

| In re:<br>TOWER PARK PROPERTIES, LLC, | | CHAPTER 11 |
|---|---|---|
| | Debtor(s). | CASE NUMBER 2:08-bk-20298-BR |

<u>Served by Personal Delivery via Attorney Service</u>
Hon. Barry Russell
United States Bankruptcy Court
Courtroom 1668
255 East Temple Street
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 17, 2009 | John Berwick | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

Tower Park Properties
2:08-bk-20298-BR

Tower Park Properties, LLC
Robert S. Mann
Silver & Freedman, APLC
2029 Century Park East, 19th Floor
Los Angeles, CA 90067

Counsel to Secured Creditor Wayne & Sheldon
Williams, Randall Rubin
Kenneth S. Ingber
Stephanie D'Amato
2029 Century Park East, Suite 1400
Los Angeles, CA 90067

Creditors Committee
G. William Rose
WRA Engineering, Inc.
24933 Avenue Stanford
Valencia, CA 91355

Securities Exchange Commission
5670 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90036

Oakridge Landscape Inc.
8618 Haskell Ave.
North Hills, CA 91343

RSN
LA County Treasurer and Tax Collector
PO Box 54110
Los Angeles, CA 90051-0110

Secured Creditor
MH Holdings II H, LLC
Attn: Conrad Klein
10100 Santa Monica Blvd, Ste. 300
Los Angeles, CA 90067

Grobstein, Horwath & Company LLP
15233 Ventura Blvd., 9th Fl
Sherman Oaks, CA 91403

U.S. Trustee
Russell Clementson, Esq.
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

RSN-Counsel-Hughes Investment, MH Holdings
Paul Walker, Richard Peters, Michell Pole,
Christina Craige - Sidley & Austin
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013

Creditors Committee Chair President
Gary L. Morris
Pacific Crest Consultants
23622 Calabassas Road, Suite 100
Calabasas, CA 91302

RSN - Stephen King
KGMAC LLC and Prestige Ocean Properties LC
4243 Dunwoody Club Dr., Ste. 103
Atlanta, GA 30350

RSN - Counsel for Finton Associates
Donald Segretti
19800 McArthur Blvd., Suite 1000
Irvine, CA 92612

Barry Weisz
Silver & Freedman
2029 Century Park East, 19th Floor
Los Angeles, CA 90067

Secured Creditor
Hughes Investment Partnership LLP
Attn: Conrad Klein
10100 Santa Monica Blvd, Ste. 300
Los Angeles, CA 90067

Securities Exchange Commission
450 5th Street, N.W.
Washington, DC 20549

Charles Diekens
155 N. Crescent Drive, # 318
Beverly Hills, CA 90210

Attorney for Hughes Investment, MH Holc
Robert P. Friedman / Mark Abramson
Law Offices of Robert Friedman
827 Moraga Drive
Bel Air, CA 90049

Creditors Committee
Larry Wilmot
Camarillo Engineering, Inc.
P.O. Box 758
Somis, CA 93066

RSN - Counsel for Finton Associates
Eoin L. Kreditor
Friedman Stroffe & Gerard, P.C.
19800 McArthur Blvd., Suite 1100
Irvine, CA 92612

Secured Creditor
Marvin Barsky
10100 Santa Monica Blvd., Suite 300
Los Angeles, CA 90067

Franchise Tax Board
Special Procedures
POB 2952
Sacramento, CA 95812

RSN – Hablinski + Manion Architecture L
Mehrdad Farivar / Kurt A. Dreibholz
MORRIS POLICH & PURDY LLP
1055 W. Seventh Street, 24th Floor
Los Angeles, CA 90017

Ernie Z Park
13215 E Penn St #510
Whittier, CA 90602